IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| REGENTS HEALTH RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:11-656 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| ADVANCED DIAGNOSTIC IMAGING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff, Regents Health Resources, Inc. ("RHRI"), a Tennessee corporation, filed his action under 28 U.S.C. § 1332, the federal diversity statute against the Defendant Advanced Diagnostic Imaging, Inc. ("ADI"), a Florida corporation. Plaintiff asserts breach of contract claims that ADI engaged Plaintiff to pursue the sale of ADI's assets for the best price and Plaintiff did so, but ADI failed to pay for Plaintiff's services under the parties' agreement.

Before the Court is ADI's motion to dismiss (Docket Entry No. 6) contending that this Court lacks personal jurisdiction in this action. ADI, a Florida corporation, asserts that its principal place of business in Tampa, Florida where the Defendants actually conducts its business of medical imaging and operating radiology centers in the Tampa area. In response, Plaintiff asserts that the Defendant consented to jurisdiction in Tennessee in the parties' agreement that includes a forum selection clause designating Tennessee as the forum for disputes under the parties' agreement. (Docket Entry No. 12).

### A. Analysis of the Motion

According to Larry Smith, ADI's chief executive officer, ADI owns, operates and manages diagnostic imaging facilities in the area of Hillsborough County, Florida. (Docket

1

Entry No. 6-1, Smith Affidavit at 1-2). ADI is not registered to conduct business in Tennessee and does not have any offices, employees, officers, directors or members in Tennessee. Id. at 2. ADI dos not own any real property in Tennessee or bank account nor other assets in Tennessee. Id. ADI has not paid any taxes in Tennessee nor advertised or promoted its business to Tennessee consumers or businesses. Id.

In 2007, Plaintiff's representative contacted ADI in 2007, in Florida about a business relationship. Id. at 2-3. Smith asserts that RHRI's business proposal involved possible acquisition of ADI's properties in Florida. Id. at 3. Although the transaction did not result in a sale, Smith telephone Brian Baker, RHRI's president to discuss a prospective business relationship. Id. ADI insists that its only visit to Tennessee was a one day trip by Smith as ADI's representative in September, 2007 to Nashville to a trade association meeting where Baker made a presentation about RHRI's business. According to Smith, he greeted Baker at the meeting, but did not engage in any "substantive business decision." Id.

On October 23, 2007, Smith emailed Baker about a market rumor of a significant sale of 12 imaging centers. (Docket Entry No. 14-1 at 7). Smith stated that "I would like to fly to Nashville and meet with you and your associate to begin gathering information in preparation for marketing our company." Id. Baker responded favorably informing Smith; "We can come down or you can come up." Id. On November 7, 2007, Smith responded that he would travel to Nashville and later meet with his board of directors. Id. at 6. Aside from this visit and emails, there were also telephone contacts exchanged between ADI's and RHRI's representatives. Id. at 4. Brian Baker of RHRI later traveled to ADI's offices in Florida to meet with Smith and several members of ADI's board of directors. Id.

2

Plaintiff responds with the affidavit of Baker, RHRI's president who describes Smith's September, 2007 visit to Nashville for a trade association conference where Smith expressed an interest in working with RHRI. (Docket Entry No. 14-1 at 2). In June and July 2008, ADI engaged RHRI to evaluate ADI's operations and potential purchase of a radiology center. Id. at 3. Baker asserts that he conducted most of his work for ADI in Tennessee in reviewing ADI's documents and plans. Id. at 5. Baker describes 200 telephone calls and 200 emails over a two year period that he and other RHRI representatives exchanged with ADI personnel. Id. RHRI secured two proposed purchases for ADI. Id. at 4. RHRI'S representatives traveled to Florida for those agreements. All of RHRI work for ADI related to ADI's operations in Florida and the potential purchasers of ADI's assets and related negotiations were in Florida.

The parties' agreement contains a forum selection clause that provides Tennessee law governs the parties' agreement and any disputes there under would be decided in Davidson County, Tennessee jurisdiction and venue: "This Agreement and the right of the client [ADI] hereto shall be governed by construed and enforced in accordance with the substantive laws of the State of Tennessee, without regard to its conflicts of law provisions venue for any disputes arising hereunder shall be Davidson County, Tennessee." (Docket Entry No. 6-1 at 7). Defendant contends, however, that this particular provision was not the subject of the parties' negotiations. Id.

### B. Conclusions of Law

There are two types of personal jurisdiction: "specific jurisdiction" and "general jurisdiction." Specific jurisdiction over a defendant exists where the action "aris[es] out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 n.8 (1984). General jurisdiction requires a defendant's contacts that are

3

of "a 'continuous and systematic' nature." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952). See also Third Nat'l Bank v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). The only issue here is specific jurisdiction.

On the Defendant's motion to dismiss for lack of personal jurisdiction, Plaintiff bears the burden of a prima facie showing of personal jurisdiction, that is, some proof to support the Court's exercise of jurisdiction over these Defendants. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). See also CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996). When a district court rules on Fed. R. Civ. P. 12(b)(2) motion without conducting an evidentiary hearing, the Court must consider the pleadings and affidavits in a light most favorable to the plaintiff. Theunissen, 935 F.2d at 1458-59. See also Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980). Moreover, in such instances, the Court "does not weigh the controverting assertions of the party seeking dismissal". CompuServe., 89 F.3d at 1262 (emphasis omitted). The Sixth Circuit explained that "we want 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.' Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction." Id. (quoting Theunissen, 935 F.2d at 1459). Here, the Defendant presents an affidavit with specific facts to support its jurisdictional challenge.

Specific jurisdiction exists where the action "aris[es] out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Columbia, 466 U.S. at 414 n.8. In Southern Machine Co., Inc. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit summarized the governing principles in a three-part test for determining whether specific jurisdiction exists:

4

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence of the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Id. at 381 (footnote omitted). The Sixth Circuit has held that "each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." LAK, Inc. v. Deer Creek Enters., 885 F.2d 1293, 1303 (6th Cir. 1989).

As the Sixth Circuit later stated, "[t]he 'sine qua non' of personal jurisdiction is the purposeful availment factor under which the defendant must 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1273 (6th Cir. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (with citation omitted and emphasis added)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475 (citations omitted).

Here, the Defendant denies any purposeful availment of doing business in Tennessee and asserts that Plaintiffs' claims do not arise out of nor relate to Tennessee, but from the Defendants' business in Florida and Plaintiff's activities in the relationship occurred in Florida.

As to the "arising from" requirement, the operative facts of the controversy must arise from the defendant's contacts with the state. Calphalon Corp. v. Rowlette, 228 F.3d 718, 723 (6th Cir. 2000). If the conduct at issue does not arise from "'the very soil from which the action .

5

. . grew,' the exercise of jurisdiction may still be deemed reasonable if ... the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state." Id. at 724. Here, the facts nor the consequences of the acts at issue occurred in Florida and Tennessee. The Defendant is in Florida where the acquisition or potential sales of its businesses would occur. Plaintiff's assessment of such sales or acquisition of businesses for the Defendant would involve research and other activities in Florida. The unsuccessful sale and breach of contract that give rise to Plaintiff's damages claims, occurred in Florida. Yet, RHRI also performed significant work for ADI in Tennessee as reflected in the parties' representatives more than 200 telephone calls and emails between Tennessee and Florida. To be sure, the effect of the damages would be in Tennessee.

As to whether Defendant's conduct has substantial connection to this forum, the exercise of jurisdiction must "comport with 'traditional notions of fair play and substantial justice.'" Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1117 (6th Cir. 1994) (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987)). On these evaluations, the following factors to consider are:

> . . . the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies."

Id. (quoting Asahi Metal, 480 U.S. at 113) (citation omitted).

Here, litigation in Tennessee would impose substantial burdens on the Defendant. The Defendant's officials knowledgeable about this controversy, are in Florida. The unsuccessful sale and failure to pay also represent substantial ties to Florida, not Tennessee. Yet, Tennessee

also has an interest in business transactions of its citizens and litigation in Florida would pose an equal burden to Plaintiff. Absent the forum selection clause, the Curt would conclude that Plaintiff has not met its burden that the Defendant has "significant contacts with Tennessee for this Court to possess personal jurisdiction over this Defendant.

As to the forum selection clause, as a diversity action, the Court must apply State law. Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938). Under Tennessee law, the validity of the contract and the substantive rights of the parties thereunder are to be governed by the law which the parties intended to govern their relations with the legal presumption that absent a contrary intent the parties intended the law the place the making of the contract. Goodwin Brothers Leasing, Inc. v. H. B., Inc., 597 S. W.2d 303 (Tenn. 1980) (rehearing denied 1980). See also, Hamilton National Bank of Chattanooga v. Meadow, 492 F.2d 1243 (6th Cir. 1974).

Under Tennessee law, contracts that contain forum selection clause are enforceable, if their enforcement is reasonable. In Dyersburg Machine Works, Inc. v. Rentenbac Engineering Co., et al., 650 S. W.2d 378 (Tenn. 1983) the Tennessee Supreme Court stated the controlling Tennessee principles on such contract clauses as follows:

> The Model Choice of Forum Act [that was not adopted in Tennessee] provides that an unselected court must give effect to the choice of the parties and refuse to entertain the action unless (1) the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action; (2) or the other state would be a substantially less convenient place for the trial of the action than this state; (3) or the agreement as to the place of the action was obtained by misrepresentation, duress, abuse of economic power, or other unconscionable means; (4) or it would for some other reason be unfair or unreasonable to enforce the agreement.
>
> Section 80 of the Restatement (2d) of Conflict Laws (1971), provides:
>
> "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable."

7

> \* \* \*
> We conclude that the courts of this state should give consideration to the above mentioned factors and any others which bear upon the fundamental fairness of enforcing such a forum selection clause, and should enforce such a clause unless the party opposing enforcement demonstrates that it would be unfair and inequitable to do so.

650 S.W.2d at 380. [footnote omitted]

Moreover, the United States Supreme Court upheld a forum selection clause where that "[t]here are compelling reasons why a freely negotiated private international agreement unaffected by fraud, undue influence or overwhelming bargaining powers ... should be given full effect." Bremen v. Zapata Off-shore Company, 407 U.S. 1, 12 (1972).

Under Tennessee law, the party opposing the enforcement of the forum selection clause bears the burden of proof to establish that enforcement of this type of clause is unreasonable. In Head v. Screen Gems-EMI Music, Inc., the Tennessee Court of Appeals, a plaintiff contended that he did not understand the forum selection clause when he executed the contract. Yet, the Tennessee Court of Appeals found "nothing contained in either the plaintiff's affidavit or in his complaint shows that the forum selection clause is unreasonable." Id. at 8.

As applied here, the Court does not consider enforcement of this forum selection clause to be unreasonable. The parties are sophisticated businesses that bargained at arm's length. Several of the Plaintiff's representatives who negotiated the contract are in Tennessee. There is no proof of misrepresentation or fraud or unconscionable conduct by Plaintiff in connection with the execution of this contract. The contract terms on their face are clear and unambiguous for persons who are engaged in this type of commercial venture.

Thus, the Court concludes that the Defendant consented to litigation in Tennessee by its agreement that Tennessee would be the forum for any legal disputes under the parties' agreement.

Thus, the Court concludes that this Defendant's motion to dismiss should be denied. An appropriate Order is filed herewith.

**ENTERED** this the ___24th___ day of October, 2011.

William J. Haynes, Jr.
United States District Judge